# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

_____

)
In re:                                                )
                                                      )                    Case No. 15-50286-SCS
ROBERT LEE BEALE,                                     )
                                                      )                    Chapter 13
                    *Debtor.*                         )
_____)

## MEMORANDUM OPINION

This matter comes before the Court on the Order, entered on July 14, 2015, suspending

the application of subsections (C)(1)(a) and (C)(3)(a) of Local Bankruptcy Rule 2016-1,[1] which

establish a presumptively reasonable attorney fee for Chapter 13 cases, as to Jessica R. Casey

("Ms. Casey"), counsel for Robert Lee Beale in the above-captioned case (the "Suspension

Order").  Ms. Casey filed a request for hearing with respect to the Suspension Order on July 24,

2015, in accordance with Local Bankruptcy Rule 2016-1(C)(3)(a)(v), which permits counsel to

request a hearing within fourteen days of the Court's ruling.  The Court convened the requested

hearing on September 11, 2015, and considered evidence and argument presented by Ms. Casey,

on which basis she requested the Court reconsider its decision to suspend the application of

subsections (C)(1)(a) and (C)(3)(a) of Local Bankruptcy Rule 2016-1 in this case.  The Court

continued the matter to September 25, 2015, at which time the Court heard further argument

from Ms. Casey.

_____

[1] All references and citations to Local Bankruptcy Rule 2016-1 in this Memorandum
Opinion are to the version of the rule as set forth in this Court's Local Bankruptcy Rules
(Version 11/26/14), made effective on December 1, 2014, and in effect at the relevant time.  *See*
Local Bankruptcy Rules (Version 11/26/14) https://www.vaeb.uscourts.gov/wordpress/?wpfb_dl
=589 (last visited June 8, 2016).

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).  This Memorandum Opinion constitutes the findings of fact and conclusions of law of this Court pursuant to Federal Rule of Civil Procedure 52, as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7052.

For the reasons stated below, the Court concludes that the suspension of the application of subsections (C)(1)(a) and (C)(3)(a) of Local Bankruptcy Rule 2016-1 shall remain in effect as to Ms. Casey in this case.

## I.  Procedural History

Robert Lee Beale (the "Debtor") filed a voluntary petition under Chapter 13 of Title 11 on March 11, 2015.  Michael P. Cotter was appointed as Chapter 13 trustee (the "Chapter 13 Trustee").  The Debtor did not file any bankruptcy schedules or statements or a Chapter 13 plan at the time of the filing of his Chapter 13 petition.  On March 25, 2015, the date the Debtor's bankruptcy schedules and statements and Chapter 13 plan were due, the Debtor filed a motion to extend time to file the required documents (the "Motion to Extend Time").  The Court granted the Motion to Extend Time by order entered March 26, 2015, affording the Debtor until April 1, 2015, to file schedules and statements and until April 8, 2015, to file a Chapter 13 plan.  Shortly thereafter, on March 31, 2015, Ms. Casey filed a notice of appearance on behalf of the Debtor.  On the same date, the Debtor, through counsel, filed an amended petition, schedules, and Chapter 13 plan.  Included among the Debtor's schedules and statements was the Disclosure of Compensation of Attorney for Debtor, filed pursuant to 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b) (the "Disclosure of Compensation").  The Disclosure of Compensation indicated that Ms. Casey agreed to accept $5,000.00 in exchange for

representation of the Debtor in this case and had received $500.00 from the Debtor, leaving a

$4,500.00 balance to be paid through the Debtor's Chapter 13 plan.   The Disclosure of

Compensation further provided that Ms. Casey's fee excluded only adversary proceedings.   The

attorney fee disclosure in the Disclosure of Compensation constituted Ms. Casey's election to be

compensated in this case in accordance with the following provisions of Local Bankruptcy Rule

2016-1(C):

 (1) Generally

> (a) The Court may award fees and expenses to the attorney for the debtor(s) in a chapter 13 case, without a hearing, at the Court's direction, in an amount not to exceed $5,000, as set forth in paragraph (C)(3) of this Local Bankruptcy Rule, and subject to periodic adjustment, as provided for in subparagraph (C)(3)(e) of this Local Bankruptcy Rule.

> . . .

(3) Fees Requested Not in Excess of $5,000 [For all Cases and Proceedings (Absent Specified Exceptions) Filed on or After August 1, 2014]

> (a) If the initial fee charged to a debtor(s) for services in a chapter 13 case, filed on or after August 1, 2014, does not exceed $5,000 (other than the initial filing fee) a formal application for approval and payment of the unpaid amount through the chapter 13 plan will not be required if the total fee and the unpaid portion clearly is set forth in the chapter 13 plan, and the fee is consistent with the disclosure of compensation statement filed under Federal Rule of Bankruptcy Procedure 2016 at the commencement of the case.   An election under this subparagraph must be made at the commencement of the case; otherwise, it shall be deemed waived and compensation and reimbursement of expenses shall be requested [by filing an application for compensation with the Court].

LBR 2016-1(C)(1)(a), (3)(a) (collectively, the "No-Look Fee").[2]

---

    [2] The term "No-Look Fee," as used in this Memorandum Opinion, represents a shorthand term widely used among bankruptcy courts and professionals to describe a fee deemed by a bankruptcy court to be presumptively reasonable in chapter 13 cases.   As the Court emphasizes

The Court convened a confirmation hearing on the Chapter 13 plan on May 8, 2015.  At that hearing, the Court sustained an objection to confirmation filed on behalf of LPP Mortgage, Ltd. ("LPP").  To memorialize its ruling, the Court entered an order denying confirmation of the Chapter 13 plan on May 12, 2015 (the "Order Denying Confirmation"). In accordance with Local Bankruptcy Rule 3015-2, the Order Denying Confirmation directed the Clerk of this Court (the "Clerk") to dismiss the case unless, within twenty-one days, the Debtor either filed an amended Chapter 13 plan, moved to convert the case to one under another chapter of Title 11, or moved for reconsideration of or appealed the Order Denying Confirmation.  The Debtor failed to take any of the aforementioned actions within twenty-one days of the Order Denying Confirmation.  However, because the Debtor had filed a prior bankruptcy case that was pending within one year of the instant case,[3] the Clerk did not dismiss the case for failure to comply with Local Bankruptcy Rule 3015-2 and the Order Denying Confirmation and instead issued a notice to show cause to the Debtor pursuant to the provisions of Local Bankruptcy Rule 1017-3 as were then in effect.[4]  On June 8, 2015, the Clerk requested the issuance of a notice to show cause,

---

throughout this Memorandum Opinion, use of the term "No-Look Fee" does not signify that the requested fee is in any way exempt from scrutiny.

[3] The Debtor filed a *pro se* Chapter 13 case (Case No. 14-51503-SCS) on November 3, 2014, which was dismissed on November 21, 2014, pursuant to Local Bankruptcy Rules 1007-1 and 3015-2, for failure to timely file schedules, statements, and a Chapter 13 plan.

[4] At the relevant time, Local Bankruptcy Rule 1017-3 provided as follows:

Rule to Show Cause in Lieu of Dismissal in Certain Cases:  Notwithstanding the provisions of LBR 1006-1, 1007-1(A), 1007-3(C), 2003-1(B), 3015-1(G), 3015-2(H) and 3070-1(C), the Clerk shall not enter an order dismissing the debtor's case if the case was previously converted from any other chapter of title 11 or if the debtor was a debtor in another case pending at any time within 12 months preceding the filing of the present case.  In such a case, the Clerk shall, in lieu of dismissal, issue a rule to show cause to the debtor and set the matter for a hearing.

LBR 1017-3 (Version 11/26/14).

which was subsequently entered on the docket on June 11, 2015 (the "Notice to Show Cause").

The Notice to Show Cause provided that the Debtor must appear at a hearing and show cause

why "the case should not be converted to another chapter, or why the [Debtor] should not be held

in civil contempt, or why other sanctions, including dismissal with prejudice to refiling or to the

discharge in a later case of debts dischargeable in this case, should not be imposed for failure to

comply with [the Order Denying Confirmation and Local Bankruptcy Rule 3015-2]." On June 8,

2015, after the Clerk requested the issuance of the Notice to Show Cause and six days after the

expiration of the deadline imposed by the Order Denying Confirmation, Ms. Casey filed the

Debtor's amended Chapter 13 plan (the "Amended Plan"). The Chapter 13 Trustee responded to

the Notice to Show Cause on June 17, 2015, acknowledging the filing of the Amended Plan and

stating that he would not object should the Court deem it appropriate to permit the case to

proceed.

The Court convened a hearing on the Notice to Show Cause on July 10, 2015, at which

Ms. Casey, the Debtor, and counsel for the Chapter 13 Trustee appeared. At the hearing, Ms.

Casey provided the following explanation for the late-filed Amended Plan, which resulted in the

issuance of the Notice to Show Cause:

> This plan was filed six days late, partially due—well, it was mainly due to my
> oversight. I did file it the same day as the show cause—that the show cause was
> issued. Because I did realize that it was a little bit late, and file—he signed it, I
> believe, two days before I actually filed it, and I did realize that it was late on that
> day, and I filed it as soon as I realized that it was late. And then I saw the show
> cause come through my e-mail. I believe it actually—yeah, it was filed on the
> same day. So it was my oversight.

Transcript of July 10, 2015 Hearing at 2-3, ECF No. 48. On the basis of Ms. Casey's

representation that the Debtor desired to proceed with his case and the Trustee's lack of

objection thereto, the Court dismissed the Notice to Show Cause. *See id.* at 3. However,

because the late-filed Amended Plan resulted from Ms. Casey's oversight with the attendant possibility of significant prejudice to the Debtor, the Court *sua sponte* conditioned dismissal of the Notice to Show Cause on the suspension of the application of the No-Look Fee as to Ms. Casey in this case pursuant to its authority under Local Bankruptcy Rule 2016-1(c)(3)(a)(v). *See id.* Accordingly, on July 14, 2015, the Court entered the Suspension Order, which dismissed the Notice to Show Cause and further suspended the application of the No-Look Fee in this case and ordered that Ms. Casey file a fee application.[5] In accordance with Local Bankruptcy Rule 2016-1(C)(3)(a)(v), Ms. Casey filed a request for hearing on July 24, 2015, as amended on August 17, 2015, with respect to the Court's ruling. The Court convened the requested hearing on September 11, 2015, and continued the hearing to and concluded the hearing on September 25, 2015. In anticipation of the requested hearing, Ms. Casey filed a memorandum brief with the Court on September 9, 2015, which was amended on September 22, 2015, to include additional analysis (the "Amended Brief").

## II. The Law Governing Attorney Compensation

In every bankruptcy case, an attorney must file a statement that discloses compensation paid or agreements for compensation and the source of such compensation if the payment or agreement was made within one year preceding the commencement of the case for the attorney's

---

[5] The Amended Plan was confirmed by order entered August 20, 2015. Ms. Casey appears to contend the effect of the confirmation of the Amended Plan was to supersede the Suspension Order and approve the No-Look Fee in this case. *See* Amended Memorandum Brief in Support of Debtors [*sic*] Attorney's Request for Hearing on Court's Sua Sponte Denial of the No Look Fee at 6, ECF No. 60. However, because the Suspension Order specifically ordered that the provisions of the Local Bankruptcy Rule 2016-1(C) that permit the approval of compensation without application or hearing were suspended in this case, her contention is unfounded. Further, the Debtor filed a second amended Chapter 13 plan on November 20, 2015, which the Court confirmed by order entered February 24, 2016. The confirmation order entered February 24, 2016, explicitly provided that the matter of Ms. Casey's compensation in this case remained pending before the Court.

services in contemplation of or in connection with the case.  11 U.S.C. § 329(a); *see also* Fed. R. Bankr. P. 2016(b).   Pursuant to 11 U.S.C. § 330(a)(1), the court may award an attorney reasonable compensation for actual and necessary services and expenses.  11 U.S.C. § 330(a)(1). In individual cases under Chapter 12 or Chapter 13, Section 330(a)(4)(B) authorizes the court to "allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in [11 U.S.C. § 330]."  11 U.S.C. § 330(a)(4)(B).

The reasonableness of compensation is determined by examining the nature, extent, and value of the services provided by reference to the following nonexclusive factors:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [Title 11];

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [Title 11].

11 U.S.C. § 330(a)(3).

To address the challenges of attorney compensation unique to Chapter 13 cases, many bankruptcy courts, including this Court, establish a flat amount of compensation for services provided in a Chapter 13 case, which is presumed to be reasonable under 11 U.S.C. § 330, and

the court may allow without need for formal application or hearing. *See In re Williams*, 357 B.R. 434, 439 n.3 (B.A.P. 6th Cir. 2007). To prescribe a presumptively reasonable fee, a bankruptcy court must consider the time necessary to deliver the services required to complete a routine Chapter 13 case together with the hourly rate in the local market, resulting in a "precalculated lodestar." *See In re Cahill*, 428 F.3d 536, 540-41 (5th Cir. 2005). In *Williams*, the Bankruptcy Appellate Panel for the Sixth Circuit recognized that bankruptcy courts set presumptively reasonable compensation in Chapter 13 cases to "promote[] efficiency by relieving the courts of the administrative burden of reviewing numerous attorney's fee applications," "encourage[] predictability and efficiency," and "save[] time for the court, trustees and the attorneys." *In re Williams*, 357 B.R. at 439 n.3.

With these pragmatic concerns in mind, this Court established the No-Look Fee as a presumptively reasonable award of fees and expenses for attorneys who represent Chapter 13 debtors in an amount not to exceed $5,000.00, subject to periodic adjustment as specified in Local Bankruptcy Rule 2016-1(C)(3)(e). LBR 2016-1(C)(1)(a). Attorneys who represent Chapter 13 debtors must elect and declare at the commencement of a Chapter 13 case either to receive compensation pursuant to the No-Look Fee or by filing a detailed fee application. LBR 2016-1(C)(1)(c). When an attorney elects to receive compensation pursuant to the No-Look Fee, the Chapter 13 plan and the Disclosure of Compensation of Attorney for Debtor, filed pursuant to 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b), constitute the application for compensation. LBR 2016-1(C)(3)(a)(i). An attorney who elects the No-Look Fee cannot "unbundle legal services in the case and must cover, at a minimum, all services typically required during the pendency of the case including, but not limited to, those that reasonably would be expected to obtain confirmation of a plan, and, ultimately, completion of

the plan and, if available, a discharge."  LBR 2016-1(C)(3)(c); *see also In re McNally*, No. 06-

10073 HRT, 2006 WL 2348687, at *16 (Bankr. D. Colo. Aug. 10, 2006) ("Under the streamlined

fee process, debtors' attorneys are agreeing to perform . . . 'basic, anticipated services' as the

*quid pro quo* for having fees allowed on a more expedited basis.").  Those services excluded

from the No-Look Fee are limited to representation of a Chapter 13 debtor in an adversary

proceeding under Part 7 of the Federal Rules of Bankruptcy Procedure or an appeal.  LBR 2016-

1(C)(3)(d).

The Court emphasizes that the No-Look Fee merely establishes a presumptively

reasonable amount of compensation for a Chapter 13 debtor's attorney, but is neither a guarantee

of nor an entitlement to specific compensation.  Indeed, the language of Local Bankruptcy Rule

2016-1(C)(1)(a) makes clear that award of the No-Look Fee remains discretionary with the

Court:  "The Court *may* award fees and expenses to the attorney for the debtor(s) in a chapter 13

case, without a hearing, at the Court's direction, in an amount not to exceed $5,000 . . . ."  LBR

2016-1(C)(1)(a) (emphasis added).  Accordingly, as the Court acknowledged at the September

25, 2015 hearing in this matter, the No-Look Fee must still withstand scrutiny:  "[T]he objective

is to compensate the attorneys for the *reasonable* expenditure of their time, which is their stock

in trade.  It's not to provide a windfall for either inept performance or something that's going to

take nine hours and so therefore you get a 2,000 dollar, 2,300 dollar bump in your fees."

Transcript of September 25, 2015 Hearing (hereinafter "Tr. (9/25)") at 18, ECF No. 62

(emphasis added).  The Court's observations are consistent with the broad discretion afforded to

the bankruptcy court in awarding attorney compensation.  *See In re Moukazis*, 479 B.R. 247, 248

(Bankr. E.D.N.Y. 2012) ("The use of 'may allow' in [11 U.S.C. § 330(a)(4)(B)] makes clear that

whether fees are reasonable is a matter of the court's discretion.").  Thus, the existence of a

presumptively reasonable fee does not alleviate the court's obligation to independently evaluate

compensation, even in the absence of an objection. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19

F.3d 833, 841 (3d Cir. 1994).

A presumptively reasonable fee remains subject to the provisions of 11 U.S.C. §§ 329

and 330, which provide for court review and modification of attorney compensation. Upon

consideration of the reasonableness of the requested fee in a particular case, Section 330(a)(2)

provides that the court may award compensation less than the amount requested either on its own

motion or on the motion of the bankruptcy trustee, United States Trustee, or other party in

interest. 11 U.S.C. § 330(a)(2). Additionally, under Section 329(b), the court is authorized to

cancel a fee agreement or order disgorgement of compensation if it determines that an attorney's

fee "exceeds the reasonable value" of the services rendered. 11 U.S.C. § 329(b); *see also* Fed. R.

Bankr. P. 2017. Given that flat fees remain susceptible to objection and review by the court,

attorneys must determine whether it is prudent to completely forego detailed timekeeping. *See*

*In re McNally*, 2006 WL 2348687, at *4 ("[I]f an objection is made to the fees requested, even if

the fee is at or under the [p]resumptive level, the attorney may be hard pressed to carry the

burden of proof without detailed, contemporaneous time records. But, if the case does not draw

objection, the exercise of record-keeping may be unproductive.").

Consistent with this statutory framework, which imposes a standard of reasonableness

upon all awards of attorneys' fees, Local Bankruptcy Rule 2016-1(C)(3) provides procedural

mechanisms that subject the No-Look Fee to scrutiny from interested parties and the Court. The

presumption that the No-Look Fee is reasonable holds only in the face of unanimous consent of

all interested parties and the Court. If a party believes the No-Look Fee is unwarranted in a

particular case, the party may file an objection to the allowance and payment of compensation as

set forth in the debtor's Chapter 13 plan. LBR 2016-1(C)(3)(a)(iii).[6] If no objections to the No-Look Fee are filed, the Court may approve the No-Look Fee with the confirmation of the debtor's Chapter 13 plan without a hearing and the order confirming the plan will be treated as an order approving compensation.   LBR 2016-1(C)(3)(a)(i), (iii).   Notwithstanding the foregoing, Chapter 13 plan confirmation does not insulate the No-Look Fee from objection because the United States Trustee or the Chapter 13 trustee may still challenge the No-Look Fee upon proper pleading and after notice and a hearing should the circumstances so require.   LBR 2016-1(C)(3)(a)(v).[7]   Additionally, the Court is authorized to *sua sponte* suspend the application of the No-Look Fee at any time such that the attorney must seek compensation for fees and reimbursement of expenses through proper application.   *Id.*   If the Court suspends the application of the No-Look Fee *sua sponte*, the attorney may request a hearing within fourteen days of the Court's ruling.   *Id.*   The suspension of the application of the No-Look Fee is not a determination

---

[6] Local Bankruptcy Rule 2016-1(C)(3)(a)(iii) provides:

> Any objection to allowance and payment of compensation in the amount stated in the chapter 13 plan must be filed no later than the last day for filing objections to confirmation of the plan. If no objection is filed, the Court may approve the disclosed compensation and confirm the plan without holding a hearing.

LBR 2016-1(C)(3)(a)(iii).

[7] Local Bankruptcy Rule 2016-1(C)(3)(a)(v) provides:

> Notwithstanding the provisions of subparagraph (C)(3)(a)(iii) of this Local Bankruptcy Rule, nothing will prevent or prohibit the United States trustee or the chapter 13 trustee from filing pleadings or otherwise challenging fees awarded under this rule to the attorney for the debtor(s) after confirmation of the debtor's(s) plan, should circumstances warrant such a challenge.   Any such challenge shall be determined by the Court after notice and a hearing.   In addition, the Court, *sua sponte*, may suspend the application of this rule to the debtor's(s') attorney.   In such case, the attorney for the debtor(s) may request a hearing within 14 days of the Court's ruling.

LBR 2016-1(C)(3)(a)(v).

of the amount of compensation for services and reimbursement of expenses an attorney will ultimately be allowed.  Rather, the attorney is simply suspended from receiving compensation on the basis of the presumption established by the No-Look Fee.  The attorney's application for compensation will form the basis for the Court's determination of whether the No-Look Fee amount is a reasonable award in a particular case.

In this case, the Court exercised its authority under Local Bankruptcy Rule 2016-1(C)(3)(a)(v) when it *sua sponte* suspended the No-Look Fee as to Ms. Casey in this case as a condition of the dismissal of the Notice to Show Cause.

### III.  The Amended Brief and Requested Hearings

In support of her request for a hearing under Local Bankruptcy Rule 2016-1(C)(3)(a)(v), Ms. Casey filed the Amended Brief.  The Amended Brief questions whether the Court's *sua sponte* suspension of the application of the No-Look Fee in this case was within the scope of the Court's authority and consistent with applicable law.  In the Amended Brief, Ms. Casey characterizes the Court's decision to suspend the application of the No-Look Fee as a sanction. *See* Amended Brief at 1, 2, 4, 5, 6, 10, 15.  Consequently, many of the arguments presented in the Amended Brief flow from this characterization.  The Amended Brief frames the issues as follows:

1. Whether, under Local Bankruptcy [R]ule 2016-1(C)(3)(a)(v) . . . , it is reasonable for the Court to hold an attorney to a standard that does not allow for administrative error and thereby begins to require perfection in the execution of all duties when determining whether to deny application of the [No-Look Fee] to that attorney in any particular case?

2. Whether the Court's decision to deny the [No-Look Fee], under the circumstances present, was executed without adequate consideration for due process?

3. Whether, given the totality of the circumstances, the Court should adopt or clarify a standard of imposing the sanction of denying the [No-Look Fee] in order to avoid a taking from the attorney?

4. Whether the Court's sanction of the denial of the [No-Look Fee] and the resulting interferences with a contract between the attorney and client would necessitate the withdrawal of the attorney?

5. Whether the Court, in exercising its inherent power to sua sponte deny counsel the [No-Look Fee], exercised caution in compliance with current case law and statutes?

*Id.* at 1-2.

At the hearings in this matter and in her briefing, Ms. Casey also provides additional facts intended to elucidate her belated filing of the Amended Plan. First, she explains that the Debtor and LLP agreed prior to the confirmation hearing held on May 8, 2015, that LPP's objection to confirmation to the Debtor's original Chapter 13 plan should be sustained and that LLP would file a proof of claim, which the Debtor would properly account for in an amended Chapter 13 plan. *Id.* at 2; Transcript of September 11, 2015 Hearing (hereinafter "Tr. (9/11)") at 5-6, ECF No. 59. However, this agreement was not memorialized by a consent order prepared by the parties because the Court sustained LPP's objection to confirmation at the confirmation hearing held on May 8, 2015, and entered the Order Denying Confirmation, a form order that memorialized its ruling. *See* Amended Brief at 2; Tr. (9/11) at 6. Although the deadline to file an amended Chapter 13 plan pursuant to the terms of the Order Denying Confirmation was approaching, LPP failed to file its proof of claim as anticipated.[8] Amended Brief at 3; Tr. (9/11) at 6. After awaiting LPP's proof of claim for approximately fourteen days following the entry of the Order Denying Confirmation, Ms. Casey proceeded to prepare the Amended Plan without the benefit of LPP's proof of claim. Amended Brief at 3; Tr. (9/11) at 6. The Debtor signed the

---

[8] The Court's claims register reflects that LPP did not file its proof of claim until June 23, 2015.

Amended Plan on June 5, 2015—three days after it was due.  Amended Brief at 3; Tr. (9/11) at

6.  However, Ms. Casey did not file the Amended Plan on the date it was signed by the Debtor,

instead filing it "on June 8, 2015, when counsel was doing a bulk filing."  Amended Brief at 3;

*see also* Tr. (9/11) at 6.  On that same day, after she filed the Amended Plan, counsel received

electronic notice that the Clerk had requested issuance of the Notice to Show Cause prior to the

filing of the Amended Plan.  Amended Brief at 3; Tr. (9/11) at 6, 10-11.  At the hearing held on

September 11, 2015, Ms. Casey admitted that, in hindsight, she should have filed a response to

the Notice to Show Cause that explained what transpired regarding LPP's failure to file its proof

of claim as expected, but that she failed to do so.  Tr. (9/11) at 6-7.  She further admitted that it

did not occur to her to seek an extension of time to file the Amended Plan as the deadline

approached and she continued to await LPP's proof of claim.  *Id.* at 8.

In light of these facts and the facts in the record, the Court will address the issues Ms.

Casey raises with respect to the propriety of the Court's decision to suspend the application of

the No-Look Fee in this case.

## IV.  Analysis

### 1.  The Basis for the Suspension of the No-Look Fee

Ms. Casey contends the Court failed to apply the appropriate standard and thus exceeded

its authority when it suspended the application of the No-Look Fee in this case for her failure to

timely file the Amended Plan.  *See* Amended Brief at 3-7, 13-15.  Ms. Casey's contention is

based upon the premise that the suspension of the application of the No-Look Fee was a sanction

imposed pursuant to the Court's inherent power under 11 U.S.C. § 105(a).  *See id.* at 3-5, 13-15;

*see also* Tr. (9/11) at 9-10.  In the Amended Brief, Ms. Casey reasons that the suspension of the

No-Look Fee constituted a sanction as follows:

> The powers given [to the Court under Local Bankruptcy Rule 2016-1(c)(3)(a)(v) to *sua sponte* suspend the application of the No-Look Fee] can only be seen as either to review counsel's fees or to disgorge counsel's fees.  In a review, the entirety of the case is taken into account and the fees requested are reviewed to determine if they are warranted. . . .  If the fees are being disgorged it would be for some wrong an attorney did, which would have to rise to a level higher than mere negligence to be compliant with current case law.  In this case, the Court did not take a look at the entirety of the Debtors [*sic*] case and Counsel did not do something that amounted to more than mere negligence.  Therefore, the Court's actions can only be seen as a sanction. A sanction is defined as "penalty or punishment provided as a means of enforcing obedience to a law."  *Black's Law Dictionary*.  The Court looked at one instance of not obeying the statutes and [the Order Denying Confirmation] and [suspended the application of the No-Look Fee.]  The actions of the Court meet the exact definition of a sanction.

Amended Brief at 4-5.[9]  Expanding from the premise that the suspension of the application of the No-Look Fee constitutes a sanction comparable to disgorgement of fees, Ms. Casey advances the argument that the Court issued the Suspension Order in excess of its authority under 11 U.S.C. § 105(a) to "issue any order, process or judgment that is necessary or appropriate to carry out provisions of [Title 11]."  *See id.* at 3-4 (quoting 11 U.S.C. § 105(a)).  Ms. Casey asserts that the Court overstepped its authority under 11 U.S.C. § 105(a) by suspending the application of the No-Look Fee because her transgression in failing to timely file the Amended Plan did not rise to the level of misconduct necessary to support the exercise of the Court's authority to issue a sanction.  *See id.* at 4, 14-15.  Ms. Casey contends the suspension of the application of the No-Look Fee must be supported by a finding of "bad faith or willful misconduct" or "vexatious or wanton conduct."  *See id.* at 4 (quoting *Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1196 (9th Cir. 2003)); *id.* at 14 (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d

---

[9]  At the hearing held on September 11, 2015, Ms. Casey admitted that she had no evidence that the Court suspended the application of the No-Look Fee as a sanction, but that she "[felt] as if that's what it's being used for" when there is "any mishap that happens in a case" based upon what happened in the instant case and her general impressions, without any specific proof, of other instances when the Court has suspended the application of the No-Look Fee.  Tr. (9/11) at 22-23.

696, 703 (5th Cir. 1990)).   After detailing her success in meeting other imminent deadlines in this case and compliance with the requirements of this Court and the applicable procedural rules, Ms. Casey concludes that, under the totality of the circumstances, her "mere oversight in not filing the [Amended Plan] before the deadline does not rise to the level of misconduct that would warrant a sanction." *See id.* at 5-6.

There are two premises essential to Ms. Casey's argument that the Court applied an inappropriate standard and exceeded its authority under 11 U.S.C. § 105(a) when it suspended the application of the No-Look Fee in this case:  (1) suspension of the application of the No-Look Fee is comparable to disgorgement or denial of compensation; (2) suspension of the application of the No-Look Fee constituted a sanction for Ms. Casey's failure to timely file the Amended Plan.   As set forth below, each of these premises is false and indicates a misapprehension of the nature of the No-Look Fee itself.

First, although the Suspension Order unquestionably results in the loss of the administrative benefits associated with the No-Look Fee, it neither denies nor orders the disgorgement of any portion of the No-Look Fee amount.   As the Court acknowledged at the hearing held on September 11, 2015, the Court has not yet made any disposition regarding Ms. Casey's fees.  *See* Tr. (9/11) at 15.[10]   The effect of the Court's suspension of the application of the No-Look Fee in this case is only to require that Ms. Casey substantiate the reasonableness of

---

[10] At the hearing held on September 11, 2015, the Court explained as follows:

> You are assuming that the Court is taking away from you something to which you are entitled.  The Court has not made a disposition of your fee and we're going to get to that.  I haven't made a ruling on your fee.  All we've done is specified a different procedural pathway for you to obtain compensation and reimbursement of expenses.

Tr. (9/11) at 15.

an award of $5,000.00 in fees and expenses via a formal application.  The circumstances of a

particular case may cause a bankruptcy court to conclude that an attorney is not entitled to the

presumption that a prescribed fee is reasonable under 11 U.S.C. § 330 and require that the

attorney establish through an itemized application the reasonableness of the requested

compensation.  *See, e.g.*, *In re Bergae*, No. 13-71645, 2014 WL 1419586, at *3-4 (Bankr. C.D.

Ill. Apr. 11, 2014).  Thus, just as the existence of a presumptively reasonable fee does not

alleviate the court's duty to evaluate compensation, it also does not eliminate counsel's well-

established burden to demonstrate the reasonableness of a requested fee.  *See In re Comput.*

*Learning Ctrs., Inc.*, 272 B.R. 897, 908 (Bankr. E.D. Va. 2001) (citing *In re Perkins*, 244 B.R.

835, 838 (Bankr. D. Mont. 2000); *In re McKenna*, 93 B.R. 238, 242 (Bankr. E.D. Cal. 1988); *In*

*re King*, 88 B.R. 768, 770-71 (Bankr. E.D. Va. 1988)) ("The burden of proof with respect to a

fee application is on the applicant.").  Accordingly, the Court finds that Ms. Casey's contention

that the Court's action is akin to a disgorgement or reduction in her compensation is a false

analogy.

Second, as previously discussed, a prescribed flat fee for Chapter 13 debtors' attorneys,

like the No-Look Fee, is premised upon the idea that a court may predetermine an amount of

compensation that is *presumptively* reasonable under 11 U.S.C. § 330 in a typical Chapter 13

case.  However, this presumption is not an entitlement to or a guarantee of specific compensation

to the attorney or an absolution of the bankruptcy court from its responsibility to evaluate the

propriety of a request for compensation.  *See In re McNally*, No. 06-10073 HRT, 2006 WL

2348687, at *16 (Bankr. D. Colo. Aug. 10, 2006) ("[T]he [p]resumptively [r]easonable [f]ee is

just that, a presumption. Presumptions are rebuttable, so counsel must be prepared to meet

objections to fees. That is why the term "no look" fee is somewhat of a misnomer."); *In re Yates*,

17

217 B.R. 296, 301 (Bankr. N.D. Okla. 1998) ("The use of 'flat' or 'customary' fees does not relieve the bankruptcy court of its statutory duty to review the fees incurred to determine their reasonableness."). The bankruptcy court in *In re Yates* specifically acknowledged the misconception that a court will blindly award a presumptively reasonable fee whenever it is requested without regard to the particular circumstances of the case. *In re Yates*, 217 B.R. at 301 (citing *In re Copeland*, 154 B.R. 693, 700 (Bankr. W.D. Mich. 1993)). The bankruptcy court's duty to determine whether the specific circumstances of a case support the court's reliance on the presumed reasonableness of a prescribed fee is illustrated in *In re Bergae*, No. 13-71645, 2014 WL 1419586 (Bankr. C.D. Ill. Apr. 11, 2014). In that case, Chief Judge Mary P. Gorman of the United States Bankruptcy Court for the Central District of Illinois described her decision not to award compensation on the basis of the court's "no-look" fee as follows:

> [T]he poor quality of work provided by the [d]ebtor's attorneys caused the Court to order that an itemized application for fees be filed and that the "no-look" fee would not be awarded. Once that determination was made, it became [counsel's] responsibility to file an application justifying his fee request, and no presumption exists that he is entitled to the full "no-look" amount.

*In re Bergae*, 2014 WL 1419586, at *4. Further dispelling the notion that its "no-look" fee may be viewed as an entitlement without regard to the circumstances of a case, Chief Judge Gorman reminded that the court's "no-look" fee "is only available when attorneys provide legal services in a timely and competent manner." *Id.* at *8.

Simply put, when the Court suspended the No-Look Fee in this case, it did so in the exercise of its statutory duty to determine the reasonableness of compensation in accordance with 11 U.S.C. § 330. The exercise of this duty includes a determination of whether it is appropriate in a particular case to award compensation based solely on the presumed reasonableness embodied by the No-Look Fee. The presumption of the No-Look Fee is a

privilege by which this Court efficiently implements 11 U.S.C. § 330 and Federal Rule of

Bankruptcy Procedure 2016 and is afforded to attorneys who "provide legal services in a timely

and competent manner." *See id.* Just as the court in *In re Bergae* determined that counsel's

performance did not support an award of compensation on the basis of a presumptively

reasonable fee, this Court determined that Ms. Casey's failure to timely file the Amended Plan,

which led to the issuance of the Notice to Show Cause and exposed the Debtor possible

jeopardy, did not permit the Court to rely on the presumption of reasonableness of the No-Look

Fee.[11]   Therefore, because the Court suspended the application of the No-Look Fee in this case in

furtherance of its duty to review compensation for reasonableness under 11 U.S.C. § 330, the

Court concludes that Ms. Casey's assertion that the Suspension Order necessarily constituted a

sanction to punish her for the belated filing of the Amended Plan is misplaced.

Accordingly, Ms. Casey's argument that the Court failed to apply the appropriate

standard for the imposition of sanctions and, thus, exceeded its authority under 11 U.S.C. §

105(a) is, therefore, inapposite.

---

[11] The additional facts set forth in the Amended Brief and adduced at the hearing only reinforce the Court's determination that Ms. Casey is not entitled to the benefit of the presumption that the No-Look Fee is reasonable in this case.  Ms. Casey minimized her failure to file the Amended Plan as an "oversight," attributing much of the delay in preparing the plan to her anticipation of LPP's proof of claim, and further delay to awaiting a "bulk filing" opportunity three days after the Debtor signed the Amended Plan.  Amended Brief at 3; Tr. (9/11) at 6. Further, Ms. Casey admitted that she failed to undertake protective measures on the Debtor's behalf either by seeking an extension of time to file the Amended Plan or by filing a response to the Notice to Show Cause, which fully explained the circumstances that lead to the belated filing of the Amended Plan.  Tr. (9/11) at 6-8.  To the extent Ms. Casey lacked sufficient information to formulate a confirmable Chapter 13 plan, the Court finds that she failed take any proactive steps to address the effect of this issue on her client in light of the impending deadline imposed by the Order Denying Confirmation.  The Court also finds that Ms. Casey's delay in filing the Amended Plan was perpetuated to the Debtor's detriment by her desire to complete filings in multiple cases in "bulk" for her convenience.  Further, the Court finds that Ms. Casey failed to minimize the potential jeopardy to the Debtor by filing a response to the Notice to Show Cause. Indeed, the additional facts Ms. Casey presented do nothing to undermine the Court's initial determination that compensation in this case cannot be presumed reasonable.

### 2. Procedural Due Process

In the Amended Brief, Ms. Casey contends that she did not receive adequate due process prior to the suspension of the application of the No-Look Fee in this case.  Amended Brief at 7-8. Ms. Casey asserts that she has a property right in the receipt of the No-Look Fee that is protected by due process, which was put in jeopardy by the Court's *sua sponte* suspension of the application of the No-Look Fee.  *See id.* at 8.  To describe the nature of her due process protected property right, Ms. Casey states that she has a "property right in the funds that are to be used to pay for work done and to be done in this case."  *Id.*  By suspending the application of the No-Look Fee, Ms. Casey contends that the Court has "not taken away that right but has altered it" and placed her attorney's fees in jeopardy by failing to provide her with prior notice and an opportunity to present evidence as to her entitlement to the No-Look Fee.  *Id.*

The protections of the Due Process Clause of the Fifth Amendment of the United States Constitution are implicated only if there is a deprivation of "life, liberty, or *property*."  *See* U.S. Const. amend. V (emphasis added).  The "alteration" that Ms. Casey contends jeopardizes her compensation necessarily relates to the requirement that she substantiate her request for compensation and reimbursement of expenses by filing an application rather than receiving the prescribed No-Look Fee without need for application or a hearing.  However, the requirement that Ms. Casey demonstrate that the No-Look Fee amount is reasonable through a formal application in accordance with 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016(a) does not deprive her of property or alter a property right.

By suspending the application of the No-Look Fee, the Court decided only that it would not award compensation in reliance on a presumption and instead require Ms. Casey establish that the compensation that she seeks is reasonable through a formal application.  Ms. Casey

remains fully entitled to reasonable compensation for services rendered and reimbursement of actual and necessary expenses under 11 U.S.C. § 330, which will be determined following notice and a hearing upon Ms. Casey's application.  Should Ms. Casey's application establish that she is entitled to reasonable compensation and actual and necessary expenses totaling the No-Look Fee amount, she will be awarded that amount.  Indeed, Ms. Casey's entitlement to compensation equal to the No-Look Fee is in jeopardy only if she cannot demonstrate that the services rendered and expenses incurred in this case support such an award.  Whether this case will bear a particular fee is not dictated by the Court.  Accordingly, the Court finds that the Suspension Order had no effect on Ms. Casey's right to receive reasonable compensation for services rendered and reimbursement of actual and necessary expenses in this case.  The Court further finds that Ms. Casey cannot claim a property interest in the administrative benefits associated with the No-Look Fee or the potential loss of a windfall if she cannot justify an award of compensation and reimbursement of expenses commensurate with the No-Look Fee amount.

Thus, having determined that Ms. Casey failed to establish that the Suspension Order deprived her of a constitutionally protected property interest, the Court concludes that the argument that Ms. Casey was denied adequate due process is without merit.

### 3.  Taking of Private Property

In the Amended Brief, Ms. Casey argues that the suspension of the application of the No-Look Fee will result in a taking from the attorney unless the Court either (1) adopts a "standard of care" to govern the suspension of the application of the No-Look Fee that would enable attorneys to better anticipate the Court's ruling; or (2) permits the submission of non-contemporaneous attorney time records in support of applications for compensation.  *See* Amended Brief at 10 ("The Court would need to exercise a standard of care or move away from

a standard of requiring contemporaneous time records.  If the Court does neither, the result is that

there has been a taking from Counsel . . . ."); *see also* Tr. (9/11) at 21 (arguing "[t]here should be

some sort of standard" for challenging an attorney's fees); Tr. (9/25) at 15 (arguing that "there is

a taking in that now that I have to go back and re[-]create [time records], I'm not being properly

compensated for the time that I actually spent").

Ms. Casey provides no legal foundation for her argument that the Court must undertake

these recommended actions or risk the commission of a violation of the Fifth Amendment of the

United States Constitution.   However, a brief review of the language of the Fifth Amendment

reveals that Ms. Casey's argument is wholly without merit.   In relevant part, the Fifth

Amendment prohibits the taking of private property for public use without just compensation

(the "Takings Clause").  U.S. Const. amend V.[12]  The Suspension Order simply did not result in

the taking of private property from Ms. Casey for public use without just compensation.  Even

when, unlike here, a bankruptcy court orders the disgorgement of fees paid to an attorney, there

is no Takings Clause violation:   "Suffice it to say that a debtor's attorney does not have a

property interest in his or her compensation that is protected under the Takings Clause of the

Fifth Amendment."  *Shalaby v. Mansdorf* (*In re Nakhuda*), 544 B.R. 886, 903 (B.A.P. 9th Cir.

2016).  Accordingly, the Court concludes that suspension of the application of the No-Look Fee

does not implicate the Takings Clause.

Although the Court has concluded that suspension of the application of the No-Look Fee

cannot result in a Takings Clause violation, the Court will nevertheless address Ms. Casey's

assertion that the Court must articulate a specific "standard of care" to govern the suspension of

---

[12] "[N]or shall private property be taken for public use, without just compensation."  U.S.
Const. amend. V.

the No-Look Fee and her concerns regarding the submission of non-contemporaneous time records.

First, the implication of Ms. Casey's assertion that the Court must articulate specific standard for the suspension of the application of the No-Look Fee is that there presently exists no standard to govern the issuance of such a ruling. This assertion is without merit. In suspending the application of the No-Look Fee—an amount of compensation for services and expenses the Court deemed *presumptively* reasonable in a typical chapter 13 case—the "standard of care" that guides the Court is the principle is that compensation must be reasonable. *See* 11 U.S.C. §§ 330(a)(1)(A), (4)(B); *see also* 11 U.S.C. § 329(b). Depending upon the specific factual circumstances of a case, there are a variety of scenarios that may cause the Court to question the presumption that the "precalculated lodestar" provided for by the No-Look Fee is reasonable. *See* Tr. (9/11) at 21-22. For example, it may appear to the Court that a case demands substantially less attorney time than anticipated by the No-Look Fee or that the attorney has not discharged his or her duties with the necessary skill and professionalism contemplated by the No-Look Fee.

Since professional conduct is particularly relevant to the instant case, the Court will briefly discuss the standards of professional conduct observed by this Court. Local Bankruptcy Rule 2090-1(I) has long provided that the Virginia Rules of Professional Conduct shall govern the conduct of attorneys practicing before this Court. LBR 2090-1(I); *In re Alvarado*, 363 B.R. 484, 490 (Bankr. E.D. Va. 2007) (citing *In re Soulisak*, 227 B.R. 77 (Bankr. E.D. Va. 1998)) ("[The Virginia Rules of Professional Conduct] outline the *mandatory minimum* level of acceptable conduct for attorneys."). As Judge Kevin R. Huennekens of the Richmond Division of this Court observed in *In re Alvarado*, the duties imposed upon attorneys under the Virginia

Rules of Professional Conduct and Local Bankruptcy Rule 2090-1(I) include duties of care, competence, and trust. *In re Alvarado*, 363 B.R. at 490. Judge Huennekens noted that the Court's expectations of professionalism and ethics extend to the full spectrum of tasks that attorneys perform on behalf of their clients:

> The [d]ebtor was entirely justified in relying on [counsel] to timely file her petition and to simultaneously pay the filing fee she had previously delivered to him in trust. No particular expertise was required of [counsel] in this instance. No matter how menial these tasks may appear to be, the [d]ebtor had the right to expect that they would be accomplished in a professional and conscientious manner. A simple attention to detail was all that was necessary. Care for a client's well being demands nothing less.

*Id.* Whether an attorney conforms to these standards or, alternatively, recognizes when his or her professional conduct has fallen short of the applicable standards is a matter within the attorney's control. If an attorney engaged in the representation of a Chapter 13 debtor cannot adhere to the Court's standards of professional conduct contemplated by the No-Look Fee, the attorney may lose the benefit of the presumption that the No-Look Fee is reasonable in that case, but he or she does not lose the right to compensation. The attorney must simply follow another process.

Second, Ms. Casey appears to contend that the Court must shield an attorney from the consequences of his or her decision to forego timekeeping in cases wherein the attorney has requested the No-Look Fee. *See* Amended Brief at 8-9; Tr. (9/25) at 15. Ms. Casey laments that she did not keep contemporaneous time records because she "bargained for a flat fee," and, despite her efforts to reconstruct her time, she has "undoubtedly and unknowingly failed to include some of the time spent." Amended Brief at 8. Expanding from this, Ms. Casey appears to assume that the Court would deny the admission of reconstructed time entries when it ultimately considers an application for compensation in this case. *See id.* at 9. Further, based on her contention above that attorneys lack notice of the applicable "standard of care" governing the

24

suspension of the application of the No-Look Fee, Ms. Casey asserts that attorneys cannot foresee the Court's ruling and, thus, are unable to begin timekeeping in anticipation of a possible suspension. *Id.* at 10.

One of the main efficiencies of the No-Look Fee is that it may be requested without need for supporting documentation. *See* LBR 2016-1(C)(3)(a). However, the Court reiterates that the No-Look Fee does no more than establish a flat amount of compensation that the Court has deemed *presumptively* reasonable under 11 U.S.C. § 330 for all services and expenses in a typical Chapter 13 case. Accordingly, the absence of a requirement to submit time records in support of a No-Look Fee request does not necessarily eliminate the benefits of timekeeping because the No-Look Fee neither insulates the attorney's fee from objection nor review by the Court. If an attorney deems contemporaneous timekeeping to be a wasted effort in reliance on his or her presupposition that the Court will approve the No-Look Fee in a case, that is a decision within the attorney's discretion and a risk the attorney assumes. *See In re McNally*, No. 06-10073 HRT, 2006 WL 2348687, at *4 (Bankr. D. Colo. Aug. 10, 2006). Indeed, some Chapter 13 debtors' attorneys may forego timekeeping altogether, others may maintain time records through confirmation of the Chapter 13 plan, and still others may determine their practice on a case-by-case basis. If the Court suspends the application of the No-Look Fee and an attorney cannot provide contemporaneous time records to substantiate the compensation requested, reconstructed time records must be submitted in the following manner: "Any time entry that has been reconstructed because contemporaneous records were not made, or, if made, are not available, must be identified clearly, and an explanation provided for the absence of a contemporaneous record." LBR 2016-1(C)(3)(d)(i). Thus, there is no proscription against the submission of reconstructed time entries so long as they are properly disclosed. Nevertheless, if

reconstructed time entries are underinclusive or inaccurate, these natural consequences of the re-creation of past events fall within the scope of the risk the attorney assumed when making the decision to forego contemporaneous timekeeping.  An attorney's choice reflects the timekeeping practice the attorney believes will be in his or her economic best interest and is consistent with his or her tolerance for risk.  Accordingly, the Court concludes that it need not proactively shield an attorney from the consequences of his or her economic decision.

### 4. Contract Interference

In the Amended Brief, Ms. Casey asserts that the Suspension Order interfered with the fee agreement between her firm and the Debtor, which provided for the payment of a flat fee of $5,000.00 in contemplation of her No-Look Fee election in this case, as opposed to a fee based upon her hourly rate, and created a conflict between her firm and the Debtor.  Amended Brief at 10-11.  Ms. Casey arrives at this conclusion first based upon her speculation, without any factual support, that suspension of the application of the No-Look Fee would result in a higher fee award in the majority of Chapter 13 cases thereby imposing a greater financial burden on debtors than they bargained for in their contract for a flat fee.  *Id.* at 11.  Further, in reference to the requirement that she file an application for compensation, Ms. Casey then assumes that the time and expenses associated with the preparation and defense of a formal application will "force[] more cost and expense on Counsel beyond what was contracted."  *Id.*  Based upon the foregoing, Ms. Casey perceives the Suspension Order to have the following effect:

> The Court's rules and history do not provide an opportunity to terminate the contract, without leave from the Court, once the case is filed.  Counsel is then forced to either do additional work in filing and attending hearings on fee applications or not get paid for work already completed and withdraw from the case.  Only having these two options has severely and involuntarily modified the contract made between Counsel and the debtor.

*Id.* at 11-12.

Ms. Casey's concerns regarding the agreement between her firm and the Debtor reveal a fundamental misunderstanding of the effect of the suspension of the application of the No-Look Fee. Fee agreements between debtors and their attorneys are qualified by the bankruptcy court's authority to review attorneys' fees for reasonableness. *See In re Bergae*, No. 13-71645, 2014 WL 1419586, at *3 (Bankr. C.D. Ill. Apr. 11, 2014) (citing 11 U.S.C. § 329(b); *In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998)) ("Even with a client's agreement on the fee amount, attorney's fees for bankruptcy debtors remain subject to court review for reasonableness."). On motion or *sua sponte*, a bankruptcy court is authorized under 11 U.S.C. § 330(a)(2) to award compensation less than the amount requested if the Court determines compensation is not reasonable, or modify a fee agreement or order disgorgement of fees already paid if compensation exceeds the reasonable value of the attorney's services pursuant to 11 U.S.C. § 329(b). The No-Look Fee in no way circumscribes the Court's statutory authority under 11 U.S.C. §§ 329 and 330 to evaluate the reasonableness of compensation and determine an award commensurate with the services provided. With this in mind, the Court must again reiterate that the suspension of the application of the No-Look Fee is a determination only that the Court will not rely on the presumption that its established fee is reasonable in a particular case and will instead require the attorney demonstrate the reasonableness of the compensation via a formal application. If the attorney is ultimately unable carry his or her burden to demonstrate that an award of the No-Look Fee amount is reasonable, the Court will award an amount commensurate with the reasonable value of the attorney's services and reimburse all actual and necessary expenses. *See* 11 U.S.C. §§ 330(a)(2), 329.

In this case, Ms. Casey contracted for a flat $5,000.00 fee with the intent to elect and declare the No-Look Fee as the requested method of compensation in this case. Ms. Casey

misperceives the requirement that she establish that the compensation she requested in this case

is reasonable pursuant to 11 U.S.C. § 330 via formal application with a hypothetical opportunity

to seek compensation in excess of the $5,000.00 she contracted for with the Debtor and disclosed

on the Disclosure of Compensation filed pursuant to 11 U.S.C. § 329(a) and Federal Rule of

Bankruptcy Procedure 2016(b).  This misperception forms the basis for her argument that the

Suspension Order created a conflict between her firm and the Debtor.  However, the Court finds

that the Suspension Order does not create any financial risk for the Debtor with respect to Ms.

Casey's compensation because the suspension of the No-Look Fee does not alter the ceiling

placed on compensation pursuant to the terms of the flat fee agreement between Ms. Casey and

the Debtor.  If Ms. Casey carries her burden to establish that the $5,000.00 flat fee is reasonable

in this case through a formal application, she will receive precisely the compensation that she

bargained for with the Debtor.  If Ms. Casey is unable to demonstrate the reasonableness of the

No-Look Fee amount, the Court will determine a reasonable award based upon the evidence

presented in accordance with 11 U.S.C. §§ 329 and 330.  Thus, the Court concludes that the

Suspension Order does not place Ms. Casey in an untenable position vis-à-vis the Debtor.

## V.  Conclusion

Upon consideration of the evidence and arguments presented by Ms. Casey and for the

reasons stated herein, the Court concludes that the suspension of the application of the No-Look

Fee shall remain in effect as to Ms. Casey in this case.  As the Court has explained, the effect of

the suspension of the application of the No-Look Fee is only to eliminate the presumption that

the $5,000.00 fee requested is reasonable in this case and to instead require that Ms. Casey file

an application with the Court to substantiate the compensation requested.  The Court will make

disposition of an award of compensation upon the submission of Ms. Casey's formal application and upon review of the services rendered in this case following notice and a hearing.

The Court will enter a separate Order consistent with the findings and conclusions contained in this Memorandum Opinion.

The Clerk shall deliver copies of this Memorandum Opinion to Jessica R. Casey, counsel for the Debtor; Robert Lee Beale, Debtor; and Michael P. Cotter, Chapter 13 Trustee.

Entered this 10th day of June, 2016, at Newport News in the Eastern District of Virginia.

FRANK J. SANTORO
United States Bankruptcy Judge

Entered on Docket:  6/10/16